1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                              DISTRICT OF NEVADA

8                                      * * *

9   MARY ALEXANDER, an individual;            )
    ASHLEY BALL, a minor, by and through her  )
10  Guardian, Mary Alexander; EVERETTE        )        03:05-CV-00178-LRH-RJJ
    BALL, a minor, by and through his Guardian, )
11  Mary Alexander,                           )
                                              )
12              Plaintiffs,                   )        ORDER
                                              )
13  v.                                        )
                                              )
14  GARY UNDERHILL, in his official and       )
    individual capacity; BO LORENTZEN, in his )
15  official and individual capacity; RAY PRICE, )
    in his official and individual capacity; MIKE )
16  MIERAS, in his official and individual    )
    capacity; EDDIE BONINE, in his official and )
17  individual capacity; TOM KALLAY, in his   )
    official and individual capacity; DEBBIE  )
18  CYLKE, in her official and individual     )
    capacity; WASHOE COUNTY SCHOOL            )
19  DISTRICT; and DOES 1 through 10,          )
                                              )
20              Defendants.                   )
    _____ )

21

22         Presently before the court is a Motion to Dismiss (# 22[1]) filed by defendants Gary

23  Underhill, Bo Lorentzen, Ray Price, Mike Mieras, Eddie Bonine, Tom Kallay, Debbie Cylke and

24  Washoe County School District (collectively, "Defendants").  Plaintiffs Mary Alexander, Ashley

25  _____

26         [1] All references to (# XX) refer to the court's docket.

1  Ball and Everette\ Ball (collectively, "Plaintiffs") filed an opposition (# 24) to which Defendants

2  subsequently replied (# 27).  Plaintiffs have also filed a Supplement to Plaintiffs' Motion to

3  Dismiss (# 30) to which Defendants responded (# 33).

4  Also before the court is Plaintiffs' Request for Taking Judicial Notice (# 28).  Defendants

5  have filed an objection (# 29) to which Plaintiffs replied (# 31).

6  **I. Factual Background**

7  This is an action for damages arising out of the treatment of Plaintiffs following an affray at

8  Hug High School ("HHS") in Reno, Nevada.  HHS is within the Washoe County School District.

9  Mary Alexander ("Alexander"), an African-American female, is the mother of two minor children,

10  Ashley Ball ("Ashley") and Everette Ball ("Everette").  Ashley and Everette are students at HHS.

11  On October 7, 2004, Alexander took her children to HHS for Ashley to pick up a book.

12  While at the school, Ashley and several African-American female friends were involved in a fight

13  with several Hispanic female students.  School police officers arrived after the fight had concluded

14  and, according to Plaintiffs, began arresting all the African-American students in the vicinity

15  without knowing who participated in the fight.  Ashley and Everette were both arrested.

16  Alexander became distraught at the sight of her children being arrested.  At this time, a

17  school employee approached Alexander and asked her why she could not control her kids.

18  Alexander responded with profanity.  Alexander then went to the school office to find out where

19  the school police officers took her children and learned that Ashley was in the back office.  When

20  Alexander approached the back office, Gary Underhill ("Underhill"), a school police officer, told

21  Alexander that she could not see Ashley.  Alexander complied and waited in the office until a

22  student told her that Ashley was still in the back office.  At this point, Alexander approached the

23  back office for the second time.  Underhill quickly shut the door and informed Alexander that she

24  was under arrest.

25  Alexander was booked at county jail and released on her own recognizance.  She was later

26

1  convicted of violating County Ordinance 53.200, Resisting a Public Officer.  Ashley and Everette
2  were taken to juvenile hall.  Ashley was released that night and Everette was released the next day.
3  On October 10, 2004, Plaintiffs met with Eddie Bonine ("Bonine"), an administrator in charge of
4  student services, and were informed that Ashley and Everette were both suspended and removed
5  from HHS.

6  **II. Legal Standard**

7         In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken
8  as true and construed in a light most favorable to the non-moving party."  *Wyler Summit P'Ship v.*
9  *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).  However, a court
10 does not necessarily assume the truth of legal conclusions merely because they are cast in the form
11 of factual allegations in plaintiff's complaint.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-
12 55 (9th Cir. 1994).

13        There is a strong presumption against dismissing an action for failure to state a claim.
14 *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  "The issue is
15 not whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence in
16 support of the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*
17 *by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  Consequently, the court should not grant a
18 motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can
19 prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*,
20 355 U.S. 41, 45-46 (1957); *see also Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995).

21 **III. Discussion**

22        On March 28, 2005, Plaintiffs filed a complaint alleging twelve claims for relief: violation
23 of their Fourth and Fourteenth Amendment rights enforceable through 42 U.S.C. § 1983; violation
24 of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d; Violation of their Procedural Due Process
25 Rights enforceable through 42 U.S.C. § 1983; conspiracy in violation of 42 U.S.C. § 1985; a

26

3

violation of 42 U.S.C. § 1986; battery; false imprisonment; intentional infliction of emotional distress; negligent infliction of emotional distress; violation of sections 388.132-388.135 of the Nevada Revised Statutes; negligent supervision and training; and violation of administrative regulations.  Defendants are seeking to dismiss all of these claims.  In their opposition to Defendants' Motion to Dismiss, Plaintiffs have acquiesced in dismissal of their claims arising under section 1985, section 1986 and Nevada Revised Statute sections 388.132-388.135.  The court will discuss the remaining arguments relevant to each claim for relief in turn.

**A.  Federal Claims**

**1.  42 U.S.C. § 1983**

Plaintiffs' first claim for relief is brought pursuant to 42 U.S.C. § 1983.  Ashley and Everette allege violations of both the Fourth and Fourteenth Amendments to the United States Constitution.  Alexander's section 1983 claim alleges a violation of her Fourth Amendment rights based upon an allegedly unlawful arrest.

**a.  Ashley and Everette's Equal Protection Claim is Subsumed by Title VI**

In seeking dismissal of the first claim for relief, Defendants note that Ashley and Everette's second claim for relief, based upon the same set of facts alleged for the constitutional claims, alleges that Everette and Ashley were discriminated against based upon their race in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  Since the first two claims for relief are based upon the same set of facts, Defendants argue that Ashley and Everette's section 1983 claim is subsumed by the Title VI claim and must be dismissed.  In opposition, Ashley and Everette argue that their section 1983 claims are not subsumed by Title VI because "the underlying elements of the claims are different, the parties are different, and the remedies are different."[2]

42 U.S.C. § 1983 supplies a cause of action to a plaintiff when a person acting under the

---

[2]Plaintiffs have agreed to dismiss the individual defendants and the request for punitive damages pursuant to Title VI as Title VI does not provide for such relief.

color of law deprives that plaintiff of any "rights, privileges, or immunities secured by the Constitution and laws [of the United States.]"  However, "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983."  *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981).  In determining whether an act subsumes a section 1983 action, the court must determine whether Congress intended that act to supplant any remedy that would otherwise be available under section 1983.  *Id*. at 21.  Such Congressional intent may be found directly in the statute creating the right or inferred when the statutory scheme is incompatible with individual enforcement under section 1983.  *City of Rancho Palos Verdes, Cal. v. Abrams*, 125 S.Ct. 1453, 1458 (2005).  The defendant bears the burden of demonstrating that Congress has expressly withdrawn the section 1983 remedy.  *Golden State Transit Corp. v City of Los Angeles*, 493 U.S. 103, 107 (1989).

The Ninth Circuit has not decided the specific issue of whether section 1983 is subsumed by Title VI.  However, the Ninth Circuit has recognized the Supreme Court's *Sea Clammers* doctrine when construing other federal statutes and found that those statutes precluded a section 1983 remedy.  *See, e.g.*, *Dittman v. California*, 191 F.3d 1020 (9th Cir. 1999); *Dep't of Educ., State of Hawaii v. Katherine D.*, 727 F.2d 809 (9th Cir. 1984).  In addition, the District of Nevada has recognized that a section 1983 action is barred in the context of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq*.  *Henkle v. Gregory*, 150 F.Supp.2d 1067 (D. Nev. 2001).

In the present case, this court is called upon to decide whether Title VI serves to bar an action brought pursuant to section 1983.  While Title VI does not explicitly purport to limit section 1983 relief, 42 U.S.C. § 2000d, congressional intent to foreclose such a remedy can still be inferred from the creation of a comprehensive statutory scheme.  *Sea Clammers*, 453 U.S. at 20.  Therefore, the first question this court must decide is whether Title VI is sufficiently comprehensive to

5

1    demonstrate the congressional intent to foreclose a section 1983 remedy.  If Title VI is sufficiently

2    comprehensive, the court must determine whether Plaintiffs' section 1983 claims seek to remedy

3    conduct that is within the scope of Title VI.  Only section 1983 claims that are within the scope of

4    a comprehensive statutory scheme are subsumed by that scheme.  *See Smith v. Robinson*, 468 U.S.

5    992, 1003 n.7 (1984) *superseded by* Education of the Handicapped Act, § 615(e)(4), as amended,

6    20 U.S.C. § 1415(e)(4).

7        The courts are split as to whether Title VI subsumes section 1983.  The Seventh Circuit[3]

8    and the Western District of New York[4] have found that Title VI is sufficiently comprehensive to

9    preclude a plaintiff from bypassing its enforcement mechanisms through a section 1983 action.

10    Conversely, the Third Circuit[5] and the First Circuit[6] have found that Title VI is not sufficiently

11    comprehensive.  After examining the relevant case law and the statutory scheme of Title VI, this

12    court concludes that Title VI is sufficiently comprehensive so as to evince the congressional intent

13    to foreclose a section 1983 remedy.

14        As mentioned previously, this district has found that Title IX is sufficiently comprehensive

15    to foreclose a section 1983 remedy.  *Henkle*, 150 F.Supp.2d at 1074.  Title IX was patterned after

16    Title VI and is enforced and interpreted in the same manner as Title VI.  *Barnes v. Gorman*, 536

17    U.S. 181, 185 (2002) (citations omitted); *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001)

18    (citations omitted).  As with Title IX, the court finds that Title VI contains a comprehensive

19

20

_____

21        [3]*Boulahanis v. Bd. of Regents*, 198 F.3d 633, 641 (7th Cir. 1999).

22        [4]*Bayon v. State Univ. of New York at Buffalo*, 2001 WL 135817, *3 (W.D.N.Y. 2001).

23        [5]*Powell v. Ridge*, 189 F.3d 387, 402 (3d Cir. 1999) *overruled on other grounds by Alexander v.*
24    *Sandoval*, 532 U.S. 275 (2001).

25        [6]*Cousins v. Sec'y of the United States Dep't of Transp.*, 857 F.2d 37, 44-45 (1st Cir. 1988) (indicating
      that Title VI remedies, sought pursuant to section 505 of the Rehabilitation Act of 1973, are not "so
26    comprehensive as to indicate a congressional intent to foreclose alternate avenues of relief").

1   administrative enforcement scheme.[7]  *See* 34 C.F.R. § 100.1 *et seq.*; *Henkle*, 150 F.Supp.2d at

2   1073.

3        Title VI's administrative scheme allows persons who believe they were discriminated

4   against to file a written complaint with the responsible department official.  34 C.F.R. § 100.7(b).

5   A complaint that indicates noncompliance with Title VI triggers a prompt investigation.  34 C.F.R.

6   § 100.7(c).  If the investigation reveals a failure to comply with Title VI, the department will take

7   steps necessary to ensure compliance.  34 C.F.R. §§ 100.7, 100.8, 100.9.  Although these

8   regulations do not provide a monetary remedy for a complainant who was discriminated against,

9   the regulations do provide a process designed to effectuate compliance with Title VI.  A federally

10  funded entity that does not comply with Title VI may ultimately lose its federal financial

11  assistance.  34 C.F.R. § 100.8.  In addition to the administrative remedies, Title VI contains an

12  implied private cause of action through which individuals can obtain both injunctive relief and

13  damages.  *Sandoval*, 532 U.S. at 279.

14       An additional consideration in determining whether a particular statutory scheme should bar

15  a section 1983 action, apart from administrative and private remedies, is whether that scheme

16  provides a more restrictive private remedy for statutory violations than would otherwise be

17  available pursuant to section 1983.  *Abrams*, 125 S.Ct. at 1458.  In the context of Title VI, the

18  Supreme Court has recognized that the available remedies should sometimes be limited to

19  declaratory and injunctive relief.  *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 595-97

20  (1983).  Furthermore, a Title VI plaintiff can only seek recovery from the recipient of the federal

21  funding.  *Shotz v. City of Plantation*, 344 F.3d 1161, 1169-70 (11th Cir. 2003).  In other words,

22  individuals may not be held liable under Title VI.  *Id.*

23       Given the fact that Title VI offers an administrative enforcement scheme, a private right of

24  action and damages that are more restrictive than those available through section 1983, the court

25  ────────────────────

26       [7]In fact, Title IX relies on many of the provisions applicable to Title VI.  34 C.F.R. § 106.71.

7

finds that a remedy under section 1983 for conduct within the scope of Title VI would be incompatible with Title VI. *See Abrams*, 125 S.Ct. at 1458.  Title VI provides the exclusive mechanism for recovery to individuals who were discriminated against on the basis of race by any program or activity receiving federal financial assistance. *See* 42 U.S.C. § 2000d.

Although the court has concluded that Title VI subsumes a section 1983 remedy, the inquiry does not end here.  The next question seeks to determine which section 1983 remedies are subsumed by Title VI.  In *Henkle*, the court stated that the plaintiff could not bring a constitutional equal protection claim based upon the same facts as a Title IX claim.  150 F.Supp.2d at 1074. Relying on *Smith*, the *Henkle* court found that "it would be inconsistent to allow a plaintiff to circumvent [the Title IX] scheme by pursuing an equal protection claim under § 1983 based upon the same set of facts." *Id*.  This inconsistency would result from allowing a plaintiff to bypass the scheme Congress created to remedy such violations.  However, this reasoning is inapplicable where a plaintiff brings a cause of action pursuant to section 1983 to redress conduct that is outside the scope of the statutory scheme. *See Smith*, 468 U.S. at 1003 n.7 ("Claims not covered by the EHA should still be cognizable under § 1983, with fees available for such actions.").

In the case at bar, Plaintiffs' first cause of action alleges violations of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment.  In order to determine whether these claims for relief are subsumed by Title VI, the court must determine whether Title VI proscribes the alleged conduct for which Plaintiffs are seeking relief.  Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Ashley and Everette's Equal Protection claim alleges that they were denied the same treatment as other students on account of their race.  The court finds that such allegations fall squarely within the conduct that Title VI was designed to remedy.  Title VI essentially proscribes

1   conduct that would violate the Equal Protection Clause of the Fourteenth Amendment. *Regents of*

2   *Univ. of California v. Bakke*, 438 U.S. 265, 287 (1978) ("Title VI must be held to proscribe only

3   those racial classifications that would violate the Equal Protection Clause of the Fifth

4   Amendment."). However, as previously discussed, the remedies available under Title VI are

5   different than those that would otherwise be available pursuant to section 1983. Because Congress

6   enacted a statutory scheme sufficiently comprehensive to remedy racial discrimination committed

7   by an entity receiving federal financial assistance, Plaintiffs cannot pursue a section 1983 remedy

8   for the same conduct.

9       The court, however, reaches a different result with respect to Ashley and Everette's Fourth

10  Amendment claims. Ashley and Everette allege that their detentions and arrests were made

11  without probable cause or reasonable suspicion and that Everette's arrest was effectuated through

12  the use of excessive force.   The court finds that this claim is not subsumed by Title VI as Title VI

13  was not intended to remedy instances of unreasonable seizures in violation of the Fourth

14  Amendment. Although Ashley and Everette allege a discriminatory motive behind their arrests, the

15  cause of action asserts a claim for unreasonable seizure rather than discrimination. In addition,

16  Alexander acknowledges that she cannot bring a Title VI claim. Thereofre, Title VI cannot

17  subsume Alexander's section 1983 claim.

18                   **b. Qualified Immunity**

19      After the foregoing discussion on whether claims brought under section 1983 are subsumed

20  by Title VI, the court is left with the alleged Fourth Amendment violations against Defendants.[8]   In

21  seeking summary judgment, Defendants argue that the individually named defendants, Bonine and

22  Debbie Cylke ("Cylke"), are entitled to qualified immunity. Specifically, Defendants argue that the

23

24          [8]As mentioned previously, Alexander's section 1983 claim is "based upon  her unlawful arrest for
25  disturbance of school." Therefore, it appears that Alexander's first claim for relief is only asserting a violation
    of her Fourth Amendment rights. In addition, Plaintiffs have concurred in dismissing their Fourth Amendment
26  claims against defendants Mike Mieras and Tom Kallay.

9

1   "Complaint fails to show any affirmative act by Defendants [Bonine and Cylke] that set in motion

2   the alleged Fourth Amendment violations by Defendant Underhill, or otherwise."  Bonine is an

3   administrator for Washoe County School District and Cylke is an Area Superintendent.

4         State officials are provided with a qualified immunity against section 1983 claims "insofar

5   as their conduct does not violate clearly established statutory or constitutional rights of which a

6   reasonable person would have known."  *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005);

7   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This immunity is granted broadly and "provides

8   ample protection to all but the plainly incompetent or those who knowingly violate the law."

9   *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335,

10  341 (1986)).

11        In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step

12  evaluation of qualified immunity, which has also been adopted by the Ninth Circuit.  *See, e.g.*,

13  *Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th Cir. 2003); *Jackson v. City of*

14  *Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).  The first step taken by the court is to make a

15  constitutional inquiry by determining the following issue: "based upon the facts taken in the light

16  most favorable to the party asserting the inquiry, did the officer's conduct violate a constitutional

17  right?"  *Johnson*, 340 F.3d at 791 (citing *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir.

18  2001)); *Saucier*, 533 U.S. at 201.  If the court finds that the officer's conduct violated a

19  constitutional right, the second step of the *Saucier* analysis is that the court determine whether the

20  officer is entitled to qualified immunity.  *Johnson*, 340 F.3d at 791-92.  As part of its qualified

21  immunity analysis, the court should consider whether the law governing the conduct was clearly

22  established when the conduct occurred.  *Robinson v. Solano County*, 278 F.3d 1007, 1012 (9th Cir.

23  2001) (en banc).  If the right violated was clearly established, the court should also decide "whether

24  the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did

25  not violate a clearly established constitutional right."  *Id*. at 201-02; *Saucier*, 533 U.S. at 201-05.

26

10

1     The first step in the two-step process is intended to "set forth principles which will become

2 the basis for a holding that a right is clearly established." *Saucier*, 533 U.S. at 201.  If a court were

3 to skip this initial step, "[t]he law might be deprived of this explanation," *id.*, thereby inhibiting the

4 development of Fourth Amendment law.  *See Robinson*, 278 F.3d at 1012.  It is therefore necessary

5 to first consider the constitutional inquiry.  Only if the court determines that Plaintiffs' Fourth

6 Amendment rights were violated will the court address the immunity issue.  *Johnson*, 340 F.3d at

7 794-95; *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151.

8     The court notes that at this stage in the proceedings, the allegations contained in the

9 complaint are viewed in the light most favorable to the Plaintiffs.  Viewing the facts in this light,

10 Plaintiffs have properly alleged violations of clearly established constitutional rights.  *See Kaupp v.*

11 *Texas*, 538 U.S. 626, 630 (2003) (requiring probable cause to effectuate a seizure); *Graham v.*

12 *Connor*, 490 U.S. 386, 396-99 (1989) (discussing the Fourth Amendment right to be free from

13 *unreasonable* seizures).  Whether or not the Plaintiffs' arrests lacked probable cause or were

14 effectuated by using excessive force cannot be determined at this time.

15     However, Bonine and Cylke, as supervisory officials "can be held liable under section 1983

16 'only if they play an affirmative part in the alleged deprivation of constitutional rights.'" *Graves v.*

17 *City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir. 2003) (quoting *Rise v. Oregon*, 59 F.3d 1556,

18 1563 (9th Cir. 1995)).  "Supervisory liability is imposed against a supervisory official in his

19 individual capacity for his own culpable action or inaction in the training, supervision, or control of

20 his subordinates; for his acquiescence in the constitutional deprivations of which the complaint is

21 made; or for conduct that showed a reckless or callous indifference to the rights of others." *Larez*

22 *v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotations and citations

23 omitted).  In their complaint, Plaintiffs allege that their rights were violated because Defendants

24 implemented discriminatory procedures, policies, and customs.  Therefore, at this time, the court

25 cannot say that Plaintiffs will be unable to offer facts to prove that Bonine and Cylke were

26

responsible for the alleged Fourth Amendment violations.  Similarly, the court cannot determine whether Bonine and Cylke are entitled to qualified immunity at this time as it is not clear precisely what role, if any, these defendants played in the alleged violations.

Also, the court is cognizant of Defendants' arguments made pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  Specifically, Defendants argue that a favorable judgment on Plaintiffs' section 1983 claim would necessarily imply the invalidity of Alexander's conviction for resisting arrest and the invalidity of certain juvenile proceedings against Ashley.  Therefore, Defendants argue that *Heck* serves as a bar to one or more of Plaintiffs' section 1983 claims.  At this stage of the proceedings, the facts relative to a *Heck* argument are not clearly before the court. For this reason, the court will reserve ruling on this issue at this time.

**2.  Title VI of the Civil Rights Act of 1964**

Ashley and Everette's second cause of action alleges a violation of Title VI of the Civil Rights Act of 1964.  As mentioned previously, Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  To properly plead a cause of action, a plaintiff must allege both that the defendant is an entity engaging in racial discrimination and that it is receiving federal funding.  *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled in part on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001).

Defendants argue that this claim must be dismissed due to Plaintiffs' failure to allege that WCSD is a recipient of federal funds.  Plaintiffs have responded by requesting this court to take judicial notice of the fact that the WCSD is a federally funded entity.  This court may take judicial notice of facts that are generally known within the court's jurisdiction or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R.

Evid. 201(b).  The court concludes that it is beyond reasonable dispute that the WCSD is a federally funded entity.  Such information is clearly that type which is generally known within the territorial jurisdiction.  Accordingly, the court will take judicial notice of the fact that the WCSD is a federally funded entity.  Therefore, dismissal of Ashley and Everette's Title VI claim is inappropriate at this time.

### 3. Procedural Due Process

Ashley and Everette's third claim for relief alleges that Defendants Bonine, Cylke, and Tom Kallay violated their right to free public education as secured by the Due Process Clause of the Fourteenth Amendment.[9]  Specifically, Plaintiffs allege that Ashley and Everette were suspended from HHS without notice or an opportunity to be heard.  Defendants, purportedly relying on *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001), argue that Ashley and Everette's Due Process claim must fail because Nevada law provides adequate post-deprivation remedies for this alleged deprivation.  Ashley and Everette, on the other hand, argue that their due process rights were violated because the procedures in place were not followed.

It is undisputed that Nevada has created a property interest in a student's entitlement to a public education.  *See* Nev. Const. art. XI, § 2; *Goss v. Lopez*, 419 U.S. 565, 572-74 (1975).  The question this court must decide is whether Nevada's post-deprivation remedies prevent Ashley and Everette from pursuing a Due Process claim.  In *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court articulated the proposition that "in certain circumstances, a state can cure what would otherwise be an unconstitutional deprivation of 'life, liberty, or property' by providing adequate postdeprivation remedies."  *Zimmerman*, 255 F.3d at 737.  However, the availability of post-deprivation remedies will only cure an unconstitutional deprivation when an official has acted in "random, unpredictable, and unauthorized ways."  *Id*. at

---

[9]The court notes that although this claim for relief is brought pursuant to 42 U.S.C. § 1983, it is not subsumed by Title VI as Title VI was not intended to remedy such conduct.  *See* part A(1)(a) above.

738.  Post-deprivation remedies cannot save an unconstitutional act when the official acted

pursuant to an established procedure.  *Id.*

In *Zinermon v. Burch*, the Supreme Court clarified the reach of *Parratt* and *Hudson* and

found the analogy to those cases inapplicable where the deprivation is not unpredictable, a

predeprivation process is not impossible or absurd, and the conduct of the defendants is not

unauthorized.  494 U.S. 113, 136-39 (1990); *see also Zimmerman*, 255 F.3d at 738-39.  The court

finds the case at bar is governed by *Zinermon* and *Zimmerman* rather than *Parratt* and *Hudson*.

As with *Zinermon* and *Zimmerman*, the alleged deprivation of property occurred at a

"specific, predictable point in the process," when Plaintiffs met with Bonine on October 10, 2004,

and were informed of the disciplinary actions taken against Everette and Ashley.  Second, the

circumstances of the disciplinary action did not make a predeprivation hearing absurd or

impossible.  In fact, section 392.467 of the Nevada Revised Statutes, as with the Oakland

ordinance discussed in *Zimmerman,* explicitly states that a student will not be suspended or

expelled until he has been given notice and an opportunity to be heard.  Nev. Rev. Stat. §

392.467(2).  Finally, it is beyond dispute that "the school district may authorize the suspension or

expulsion of any pupil from any public school within the school district."  Nev. Rev. Stat. §

392.467(1).  For these reasons, *Parratt* and *Hudson* do not protect the defendants in this action

from a constitutional challenge.

Furthermore, the court finds, looking at the evidence in the light most favorable to Ashley

and Everette, that a Due Process violation may have occurred.  In *Goss*, the Supreme Court

articulated what procedure is due before a student can be suspended for a short period of time.  419

U.S. at 581.

> Students facing temporary suspension have interests qualifying for protection of the
> Due Process Clause, and due process requires, in connection with a suspension of 10
> days or less, that the student be given oral or written notice of the charges against
> him and, if he denies them, an explanation of the evidence the authorities have and
> an opportunity to present his side of the story.

14

*Id*.  However, the Supreme Court explained that there does not need to be a delay between the notice and the time of the hearing.  *Id*. at 582.  Rather, the student must be informed of the accusations against him and be given an opportunity to explain his version of the facts.  *Id*.

In arguing that their due process rights were violated, Ashley and Everette claim that during their October 10, 2004, "meeting," they were not informed of the charges, given an explanation of the evidence against them or given an opportunity to respond.  Looking at these allegations in the light most favorable to Plaintiffs, the court cannot say that they will be unable to prevail under any set of facts.  The court notes, however, that although Ashley and Everette describe the October 10, 2004, meeting with Bonine as a "meeting" rather than a "hearing," such an informal meeting may be sufficient to satisfy the dictates of due process.  *See Goss*, 419 U.S. at 582.

**B. State Law Claims**

In addition to the federal claims discussed above, Plaintiffs also bring state law claims alleging battery, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent supervision and training, and violation of administrative regulations.

Defendants argue they are entitled to immunity on these claims pursuant to Nevada Revised Statute section 41.032.  Specifically, Defendants argue the actions of all Defendants were discretionary acts that cannot form the basis for a lawsuit in Nevada.

Section 41.032(2) of the Nevada Revised Statutes provides as follows:

> no action may be brought under NRS 41.031 or against an immune contractor or an officer or employee of the State or any of its agencies or political subdivisions which is: [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor or any of these, whether or not the discretion involved is abused.

Nev. Rev. Stat. § 41.032.  "Discretionary acts are those which require the exercise of personal deliberation, decision and judgment."  *Travelers Hotel, Ltd. v. City of Reno*, 741 P.2d 1353, 1354

15

(Nev. 1987) (citing *Parker v. Mineral County*, 729 P.2d 491, 493 (Nev. 1986)).  An action can be brought, however, if the acts in question are merely "'ministerial,' amounting only to obedience to orders, or the performance of a duty in which the officer is left no choice of his own."  *Maturi v. Las Vegas Metro. Police Dep't*, 871 P.2d 932, 934 (Nev. 1994).

### 1.  State Claims Arising Directly From Arrest

The Nevada Supreme Court has specifically concluded that a police officer's decision to make a traffic stop and arrest a person for failing to sign a traffic ticket are discretionary acts because they require the officer to use his judgment.  *Ortega v. Reyna*, 953 P.2d 18, 23 (Nev. 1998).  In the present case, Underhill used his discretion to determine when to detain Plaintiffs and how to treat them once detained.  *See Maturi v. Las Vegas Metro. Police Dep't*, 871 P.2d 932, 933 (Nev. 1994) (holding officer's decision to handcuff suspect behind back instead of in front despite complaints of medical problems was discretionary).  Accordingly, all state law claims arising directly out of Plaintiffs' detention by Underhill are dismissed under Nevada's state immunity law. These claims are battery, false imprisonment, intentional infliction of emotional distress and negligent infliction of emotional distress.

### 2.  Negligent Supervision and Training

This court has held that the supervision and training of employees is not a discretionary act subject to immunity under Nevada Revised Statute 41.032.  *Herrera v. Las Vegas Metro. Police Dep't.*, 298 F.Supp.2d 1043, 1054-55 (D. Nev. 2004).  In addition, viewing the complaint in the light most favorable to Plaintiffs, the court cannot say that a claim for negligent supervision and training has not been stated.  Plaintiffs have alleged that previous incidents occurred which demonstrated to Defendants that they were negligent in their supervision or training of Underhill. As such, Plaintiffs have at least pled the minimal requirements of the tort.  *See Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996) (noting that an "employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit

16

1   for their position").

2   ### 3.  Violation of Administrative Regulations

3   Plaintiffs bring this claim pursuant to WCSD Administrative Regulation 5144.21 and

4   5144.16.  WCSD Regulation 5144.21 provides a process for resolving complaints based on

5   discrimination, harassment and retaliation.[10]  The WCSD Administrative Regulations do not

6   provide an explicit private right of action for violations of their requirements.  However, in certain

7   circumstances courts will imply a private right of action into a statutory scheme.  *See Cort v. Ash*,

8   422 U.S. 66, 78 (1975) (noting the four factors to consider when determining whether a private

9   right of action should be implied are (1) whether the plaintiff was one of the class for whose

10  special benefit the statute was enacted; (2) whether there was an indication of legislative intent to

11  create or deny such a remedy; (3) whether the remedy was consistent with the underlying purposes

12  of the legislative theme; and (4) whether the cause of action was one traditionally relegated to state

13  law so that it would be inappropriate to infer a cause of action based solely on federal law)[11]; *see*

14  *also Sports Form, Inc. v. LeRoy's Horse & Sports Place*, 823 P.2d 901, 902 (Nev. 1992) (noting

15  the factors in *Cort* are helpful for determining private right of actions in state statutes as well).

16  In this matter Plaintiffs are part of the class for which the regulations were created.

17  However, it is clear that the regulations do not contemplate court actions arising out of a failure to

18  _____

19  [10] WCSD Regulation 5144.16 requires the school district to notify students facing a long-term
    suspension of their right to an appeals process.  As the underlying rationale for this regulation is not
20  significantly different than that discussed for Regulation 5144.21, the court adopts its reasoning for
    Regulation 5144.21 to cover Regulation 5144.16.
21

22  [11]  Some courts consider the *Cort* four factor test to be implicitly overruled and reduced to a
    single factor test seeking to determine the congressional intent behind a statute.  *See Parry v. Mohawk*
23  *Motors of Mich., Inc.*, 236 F.3d 299, 308 (6th Cir. 2000).  However, the Ninth Circuit - although
    recognizing the potential conflict between *Cort* and subsequent Supreme Court cases - and the Nevada
24  Supreme Court still consider the full four factor test relevant to determining if a private right of action
    exists.  *See First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1121-22 (9th Cir. 2000).  Thus, the four
25  factor test is the appropriate test for determining whether a private right of action exists in an action
    governed by Nevada state law.
26
                                                      17

follow the regulations themselves and that such a remedy would be inconsistent with the goal of the regulations; namely encouraging the school district and its students to work together and within the system to resolve disputes based on perceived discrimination.[12]  In fact, the regulations provide an alternative avenue to the court system, without foreclosing that option, by which an aggrieved individual may attempt to resolve grievance disputes.  In essence, the school district gives individuals the ability to resolve their problems internally if they wish, without mandating that they give up their legal rights.  When weighed in this light, the relevant factors discussed in *Cort* do not imply a private right of action in the WCSD Administrative Regulations that would allow an aggrieved student to sue the WCSD based on a violation of those regulations.  Accordingly, Plaintiffs' claim for relief must be dismissed.

### C.  Plaintiffs' Request for Judicial Notice

Plaintiffs request the court to take judicial notice of the decision entered in the Second Judicial District Court of Nevada relating to the arrest of Everette.  However, this court has already determined that Everette has properly pled a violation of his Fourth Amendment rights.  Judicial notice of the state court proceeding would have no effect on the court's decisions in this action.  Therefore, judicial notice of the underlying state court action is not relevant to this proceeding.  *See* Fed. R. Evid. 402.  Plaintiffs' request is denied.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (# 22) is hereby GRANTED in part and DENIED in part as discussed in this order.

///

///

---

[12]  The regulation provides a brief note on its purpose and scope, stating: "The best solutions are those that involve input from those closest to the concern. . . . At any time, a student may choose to initiate the following grievance procedure along with having the legal right to file a grievance with . . . a court of competent jurisdiction. . . ." WCSD Reg. 5144.21 at 3.  Thus, the grievance procedure is designed as an alternative to litigation in the courts with the purpose of using those closest to the situation to work out an amicable solution outside of the court system.

1

      IT IS FURTHER ORDERED that Plaintiffs' Request for Taking Judicial Notice of the

2

decision entered in the Second Judicial District Court of Nevada (# 28) is hereby DENIED.

3

      IT IS SO ORDERED.

4

      DATED this 15th day of February, 2006.

5

6

                                    _____

7

                                    LARRY R. HICKS
                                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

19