UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARY ALEXANDER, an individual; et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GARY UNDERHILL, in his official capacity; ) <br> et al., ) <br> ) <br> Defendants. ) <br> _____ ) | 03:05-CV-00178-LRH-RJJ <br><br> ORDER |

Presently before the court are cross-motions for summary judgment. First, a Motion for Partial Summary Judgment (# 61[1]) was filed by plaintiffs, Everette Ball ("Everette"), Ashley Ball ("Ashley") and Mary Alexander ("Alexander"), as Everette and Ashley's guardian (collectively, "Plaintiffs") on January 8, 2007. Defendants, Washoe County School District ("WCSD"), Mike Mieras, Gary Underhill ("Underhill"), Ernest Beau Lorentzen, Ray Price, Tom Kallay, Eddie Bonine, and Debbie Cylke (collectively, "Defendants") have filed an opposition (# 89), and Plaintiffs replied (# 93). An *Amicus Curiae* brief (# 95) in support of Plaintiffs' motion has also been filed by the National Association for the Advancement of Colored People.

Defendants filed their Cross-Motion for Summary Judgment (## 73, 74) on July 23, 2007. Plaintiffs have filed an opposition (# 99), and Defendants replied (# 101). For purposes of this

---

[1]Refers to the court's docket number.

order, the court will only address Plaintiffs' third cause of action.

**I. Factual Background**

This is an action for damages arising out of the treatment of Plaintiffs following an affray at Hug High School. Alexander is an African-American female and the mother of Ashley and Everette. Alexander is currently employed as a teacher assistant with the Washoe County School District. (Exhibits (## 75-88), Dep. of Mary Alexander, Ex. 1 at 16:17-22.) In the fall of 2004, Ashley and Everette were students at Hug High School, a school located in the Washoe County School District. (Pls.' Mot. for Partial Summ. J. (# 61), Aff. of Everette Ball ¶ 1; Aff of Ashley Ball ¶ 1.)[2]

On October 7, 2004, Alexander drove Everette and Ashley to school because Everette received a phone call indicating that there would be a fight, and Ashley wanted to get a book out of her locker. (Exhibits (## 75-88), Dep. of Mary Alexander, Ex. 4 at 50:13-16, Dep. of Arielle Campbell, Ex. 24 at 117:19-118-2.) Ashley and Everette did not attend school that day because they were going to court in support of a family friend. *Id.* at 51:5-7.

While at school, Ashley grabbed a book from her locker. (Exhibits (## 75-88), Dep. of Ashley Ball, Ex. 3 at 80:12-13.) After getting the book, a student hit her. *Id*. At that point, a fight broke out between Ashley and the other student. *Id*. at 81:20-87:12. Ashley's friends and the other student's friends also joined in the fight. *Id*. The fight was between African-American girls and Hispanic girls and may have been started on account of race. (Exhibits (## 75-88), Dep. of Everette Ball, Ex. 5 at 129:17-130:25, 132:2-8.) It is unclear whether Everette participated in the fight. *Compare* (Pls.' Mot. for Partial Summ. J. (# 61), Aff. of Everette Ball ¶ 5) ("I did not participate in the fight but stayed up above watching to see what happened to my sister. . . .") *with* (Exhibits (## 75-88), Dep. of Gary Underhill, Ex. 16 at 37:4-8) (Everette "was one of the

---

[2]The "affidavits" of plaintiffs have not been properly notarized and will thus be treated as declarations filed pursuant to 28 U.S.C. § 1746.

2

individuals that I had seen and that I knew from before that I observed fighting in this crowd of people.")

Ashley and Everette were arrested as a result of the fight. (Exhibits (## 75-88), Dep. of Ashley Ball, Ex. 3 at 94:22-95:25.) Ashley was charged with fighting and Everette was charged with fighting, disturbance of school, resisting arrest and battery on a police officer. (Pls.' Mot. for Partial Summ. J. (# 61), Aff. of Everette Ball ¶ 7, Aff. of Ashley Ball ¶ 3.)

When Everette was being taken into custody, he kicked and threatened school police officer[3] Ernest Lorentzen ("Lorentzen"). (Exhibits (## 75-88), Aff. of Ernest Lorentzen ¶ 7.) School police officer Ray Price ("Price") went to assist Lorentzen and observed Everette kick Lorentzen. (Exhibits (## 75-88), Aff. of Ray Price, Ex. 20 ¶ 10.) As a result, Lorentzen and Price bent Everette over the hood of a patrol car. *Id*. Everette continued to kick, and he spit on Price. *Id*. The two officers picked up Everette and put him on the ground. *Id.* The officers then put Everette in the back of a squad car.[4] *Id.* Ashley and Everette were ultimately transported to the juvenile detention facility. (Exhibits (## 75-88), Offense Report, Ex. 4 at WCSD-0256.)

Around this time, dean of students Grace Hess ("Hess") asked Alexander why she could not control her kids. (Exhibits (## 75-88), Dep. of Mary Alexander, Ex. 1 at 91:1-2.) Alexander responded with profanity and a racial epithet. *Id*. at 90:10-11, 16-19. Hess felt like Alexander was going to attack her. (Exhibits (## 75-88), Dep. of Grace Hess, Ex. 10 at 26:2-27:7.) Hess subsequently walked toward the school police office. *Id*. at 29:24-25. Alexander followed Hess into the administration building. *Id*. at 31:11-12. Hess ultimately told Underhill what happened and made a statement/complaint. *Id*. at 29:24-30:15. The statement was used to initiate a citizen's

---

[3]Pursuant to Nevada law, school police officers have the powers of a peace officer. Nev. Rev. Stat. § 289.190.

[4]According to Everette, the police officers pulled him out of the back of Alexander's car window and threw him onto the car and onto the ground. (Pls.' Mot. for Partial Summ. J. (# 61), Aff. of Everette Ball ¶ 6.)

3

1  arrest. (Exhibits (## 75-88), Dep. of Gary Underhill, Ex. 16 at 57:13-18.) Thus, Underhill arrested
2  Alexander when she was in the school office. *Id*. at 62:10-12. Alexander was transported to the
3  county jail. (Exhibits (## 75-88), Offense Report, Ex. 4 at WCSD-0256.)

4        On or about October 7th or 8th, 2004, Sharon Lieberstein ("Lieberstein"), Vice Principle of
5  discipline at Hug High School during the 2004-2005 school year, mailed Alexander written notices
6  placing Ashley and Everette on emergency suspensions for ten school days pending a
7  determination of final action. (Exhibits (## 75-88), Dep. of Sharon Lieberstein, Ex. 9 at 20:5-9,
8  Notice of Suspensions, Ex. 2 at Exh 19, 20.) Alexander spoke with Lieberstein a couple days after
9  Ashley and Everette were suspended. (Exhibits (## 75-88), Dep. of Mary Alexander, Ex. 1 at
10 180:6-7.)

11       According to Defendants, Alexander, Ashley and Everette went to a meeting with school
12 officials to discuss the suspensions on October 20, 2004. (Exhibits (## 75-88), Decl. of Eddie
13 Bonine, Ex. 8 ¶ 8; Dep. of Everette Ball at 196:5-24; Pls.' Mot. for Partial Summ. J. (# 61), Aff. of
14 Mary Alexander ¶ 9, Aff. of Ashley Ball ¶ 6.) Eddie Bonine, Senior Director of Student Services
15 for WCSD at the time periods relevant to this litigation, allegedly heard Ashley and Everette's side
16 of the story and examined the school police report, the suspension notices and statements from
17 school employees. (Exhibits (## 75-88), Decl. of Eddie Bonine, Ex. 8 ¶ 8.) At this meeting,
18 Bonine allegedly informed Plaintiffs that they could appeal to Debbie Cylke ("Cylke"), one of the
19 area superintendents. *Id*. ¶ 10.

20       As a result of this alleged meeting, Bonine suspended Ashley and Everette and made
21 alternative educational placements for the students. *Id*. ¶ 8. Specifically, a letter dated October 20,
22 2004, informed Alexander that Everette was suspended for 152 school days. (Exhibits (## 75-88),
23 Oct. 20, 2004, Letter regarding Everette, Ex. 8.) However, Everette was permitted to go to
24 Opportunity School. *Id*. Ashley was suspended for twelve days and transferred to Sparks High
25 School. (Exhibits (## 75-88), Oct. 20, 2004, Letter regarding Ashley, Ex. 8.)

26

On November 3, 2004, Plaintiffs requested a Level II hearing in order to appeal Bonine's decision. (Pls.' Mot. for Partial Summ. J. (# 61), Nov. 3, 2004, Letter, Ex. 9; (Exhibits (## 75-88), Dep. of Mary Alexander, Ex. 1 at 186:20-25; Dep. of Deborah Cylke, Ex. 6 at 46:4-12.) The meeting between Plaintiffs and Cylke occurred on November 16, 2004. (Pls.' Mot. for Partial Summ. J. (# 61), Aff. of Mary Alexander ¶ 13.) On November 24, 2004, Cylke issued a decision affirming Bonine's decision. (Exhibits (## 75-88), Nov. 24, 2004, Letter, Ex. 2.)

**II. Legal Standard**

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001). For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett,* 477 U.S. at 325.

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v.*

1 *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

## III. Discussion

As mentioned above, the focus of this order is Plaintiffs' third cause of action for an alleged procedural due process violation. Both parties are seeking summary judgment on this cause of action. Plaintiffs argue that WCSD's regulations do not provide for adequate due process. Alternatively, Plaintiffs argue Defendants ignored their regulations and thus deprived Plaintiffs of due process.[5] Specifically, Plaintiffs argue they were not provided with a post-suspension hearing following the ten-day emergency suspension and they were not provided a pre-suspension hearing before the long-term suspensions occurred. Defendants, on the other hand, argue that Ashley and Everette had sufficient notice and opportunity to be heard. Alternatively, Defendants argue no due process violation occurred since there is no proof of substantial prejudice.

It is undisputed that Nevada has created a property interest in a student's entitlement to a public education. *See* Nev. Const. art. XI, § 2. In *Goss v. Lopez*, 419 U.S. 565 (1975), the Supreme Court articulated what procedure is due before a student can be suspended for a short period of time.

---

[5]The court has previously determined there is no private right of action for violations of the WCSD Administrative Regulations. (Feb. 17, 2006, Order (# 37) at 17-18.)

> Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.

*Id*. However, the Supreme Court explained that there does not need to be a delay between the notice and the time of the hearing. *Id*. at 582. Rather, the student must be informed of the accusations against him and be given an opportunity to explain his version of the facts. *Id*.

There are recurring situations in which prior notice and hearing cannot be insisted upon. *Id*. "Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school." *Id.* In such circumstances, the required procedure must occur "as soon as practicable." *Id*.

Looking at the evidence that has been presented by both parties, the court finds a hearing is necessary in order to determine whether there are genuine issues of material fact. It is undisputed that events spurring this litigation occurred on October 7, 2004. It is also undisputed that on or about October 7th or 8th, 2004, Lieberstein mailed Alexander written notices placing Ashley and Everette on emergency suspensions for ten school days pending a determination of final action. (Exhibits (## 75-88), Dep. of Sharon Lieberstein, Ex. 9 at 20:5-9, Notice of Suspensions, Ex. 4 at Exh 19, 20.) It is further undisputed that Bonine issued long-term suspension to Ashley and Everette on October 20, 2004. (Exhibits (## 75-88), Oct. 20, 2004, Letters regarding Ashley and Everette, Ex. 8.)

The issue that is unclear, however, relates to whether Plaintiffs had a hearing with Bonine and the process that occurred during that hearing. Defendants have presented a detailed affidavit from Bonine describing the meeting that allegedly occurred on October 20, 2004. *See* (Exhibits (## 75-88), Decl. of Eddie Bonine, Ex. 8 ¶¶ 7-9.) According to this affadavit, Bonine had a suspension hearing where he looked at the evidence surrounding the October 7, 2004, affray and heard Ashley and Everette's side of the story. *Id*. ¶ 8.

7

Defendants appear to dispute whether a hearing occurred on October 20, 2004. (Pls.' Reply to Defs.' Opp'n to Pls.' Mot. for Summ. J. (# 93) at 5) ("Bonine states he had a meeting with Plaintiffs. . . . This meeting was allegedly held on October 20, 2004. . . .") To support this alleged factual dispute, Plaintiffs have presented affidavits of Alexander, Ashley and Everette. In contrast to the detailed affidavit of Bonine, these affidavits are rather vague and unclear as to whether a meeting with Bonine occurred and what happened during this meeting. *See* (Pls.' Mot. for Partial Summ. J. (# 61), Aff. of Mary Alexander, Aff. of Ashley Ball, Aff. of Everette Ball.)

Alexander's affidavit indicates that she had a "brief discussion" with Bonine a few days after the October 7, 2004, incident. (Pls.' Mot. for Partial Summ. J. (# 61), Aff. of Mary Alexander ¶¶ 8-9.) However, Alexander also states, "[a]t no time were my children or myself interviewed by School District personnel regarding what took place on October 7, 2004[,] at Hug High School." *Id*. ¶ 17.

Ashley's affidavit also indicates that she had a short meeting with Bonine after the incident. (Pls.' Mot. for Partial Summ. J. (# 61), Aff. of Ashley Ball ¶ 6.) However, Ashley indicates that she never had a hearing. *Id*. ¶ 8.

The affidavit of Everette indicates that Everette was notified of his long-term suspension on October 20, 2004, but is silent as to whether any meeting occurred with Bonine. (Pls.' Mot. for Partial Summ. J. (# 61), Aff. of Everette Ball ¶ 10.) Everette's affidavit further indicates that he "never had a hearing until [he] went to trial on August 9, 2005, . . . ." *Id*. ¶ 12.

In light of the clear affidavit of Bonine and the vague affidavit's of Plaintiffs, it is unclear to the court whether there is a genuine issue of material fact concerning Plaitniffs' third cause of action. Thus, the court will hold a hearing where the parties may present evidence as to whether a meeting occurred on October 20, 2004, and what occurred during that meeting in order to determine whether there is a genuine issue of material fact. Because this issue goes to the nature of the alleged hearing provided by WCSD, Defendants shall present their evidence followed by such

rebuttal evidence as Plaintiffs choose to present.

IT IS THEREFORE ORDERED that this court will schedule a hearing up to two hours in duration to occur no later than Friday, March 7, 2008, to determine whether there are genuine issues of material fact as to Plaintiffs' third cause of action.  The parties shall meet and confer to determine a mutually agreeable time to schedule the hearing.  The parties shall then contact Rosemarie Miller, Courtroom Administrator, in order to schedule the hearing.  Rosemarie Miller can be reached at the following number: 775-686-5829.

IT IS SO ORDERED.

DATED this 22nd day of February, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE