1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                      * * *

9   MARY ALEXANDER, an individual; et al.,  )
                                            )
10                Plaintiffs,               )        03:05-CV-00178-LRH-RJJ
                                            )
11  v.                                      )
                                            )        ORDER
12  GARY UNDERHILL, in his official capacity; )
    et al.,                                 )
13                                          )
                  Defendants.               )
14  _____ )

15          Presently before the court are cross-motions for summary judgment.  First, a Motion for

16  Partial Summary Judgment (# 61[1]) was filed by plaintiffs, Everette Ball ("Everette"), Ashley Ball

17  ("Ashley") and Mary Alexander ("Alexander"), as Everette and Ashley's guardian (collectively,

18  "Plaintiffs") on January 8, 2007.  Defendants, Washoe County School District ("WCSD"), Mike

19  Mieras, Gary Underhill ("Underhill"), Ernest Beau Lorentzen, Ray Price, Tom Kallay, Eddie

20  Bonine, and Debbie Cylke (collectively, "Defendants") have filed an opposition (# 89), and

21  Plaintiffs replied (# 93).  An *Amicus Curiae* brief (# 95) in support of Plaintiffs' motion has also

22  been filed by the National Association for the Advancement of Colored People.

23          Defendants filed their Cross-Motion for Summary Judgment (## 73, 74) on July 23, 2007.

24  Plaintiffs have filed an opposition (# 99), and Defendants replied (# 101).

25

26

    _____

    [1]Refers to the court's docket number.

**I. Factual Background**

This is an action for damages arising out of the treatment of Plaintiffs following an affray at Hug High School, one of the high schools within the Washoe County School Dsitrict.  Mary Alexander ("Alexander") is an African-American female and the mother of Ashley Ball ("Ashley") and Everette Ball ("Everette").  Alexander is currently employed as a teacher assistant with the Washoe County School District.  (Exhibits (## 75-88), Dep. of Mary Alexander, Ex. 1 at 16:17-22.)  In the fall of 2004, Ashley and Everette were students at Hug High School.  (Pls.' Mot. for Partial Summ. J. (# 61), Aff. of Everette Ball ¶ 1; Aff of Ashley Ball ¶ 1.)[2]

On October 7, 2004, Alexander drove Everette and Ashley to school because Everette received a phone call indicating there would be a fight, and Ashley wanted to get a book out of her locker.  (Exhibits (## 75-88), Dep. of Mary Alexander, Ex. 4 at 50:13-16, Dep. of Arielle Campbell, Ex. 24 at 117:19-118-2.)  Ashley and Everette did not attend school that day because they were going to court in support of a family friend.  *Id.* at 51:5-7.

While at school, Ashley grabbed a book from her locker.  (Exhibits (## 75-88), Dep. of Ashley Ball, Ex. 3 at 80:12-13.)  After getting the book, a student hit her.  *Id*.  At that point, a fight broke out between Ashley and the other student.  *Id*. at 81:20-87:12.  Ashley's friends and the other student's friends also joined in the fight.  *Id*.  The fight was between African-American girls and Hispanic girls and may have been started on account of race.  (Exhibits (## 75-88), Dep. of Everette Ball, Ex. 5 at 129:17-130:25, 132:2-8.)  It is unclear whether Everette participated in the fight.  *Compare* (Pls.' Mot. for Partial Summ. J. (# 61), Aff. of Everette Ball ¶ 5) ("I did not participate in the fight but stayed up above watching to see what happened to my sister. . . .") *with* (Exhibits (## 75-88), Dep. of Gary Underhill, Ex. 16 at 37:4-8) (Everette "was one of the individuals that I had seen and that I knew from before that I observed fighting in this crowd of

---

[2]The "affidavits" of plaintiffs have not been properly notarized and will thus be treated as declarations filed pursuant to 28 U.S.C. § 1746.

1   people.")

2          Ashley and Everette were arrested as a result of the fight.  (Exhibits (## 75-88), Dep. of

3   Ashley Ball, Ex. 3 at 94:22-95:25.)  Ashley was charged with fighting and Everette was charged

4   with fighting, disturbance of school, resisting arrest and battery on a police officer.  (Pls.' Mot. for

5   Partial Summ. J. (# 61), Aff. of Everette Ball ¶ 7, Aff. of Ashley Ball ¶ 3.)

6          When Everette was being taken into custody, he kicked and threatened school police

7   officer[3] Ernest Lorentzen ("Lorentzen").  (Exhibits (## 75-88), Aff. of Ernest Lorentzen ¶ 7.)

8   School police officer Ray Price ("Price") went to assist Lorentzen and observed Everette kick

9   Lorentzen.  (Exhibits (## 75-88), Aff. of Ray Price, Ex. 20 ¶ 10.)  As a result, Lorentzen and Price

10  bent Everette over the hood of a patrol car.  *Id*.  Everette continued to kick, and he spit on Price.

11  *Id*.  The two officers picked up Everette and put him on the ground.  *Id*.  The officers then put

12  Everette in the back of a squad car.[4]  *Id*.  Ashley and Everette were ultimately transported to the

13  juvenile detention facility.  (Exhibits (## 75-88), Offense Report, Ex. 4 at WCSD-0256.)

14         Around this time, dean of students Grace Hess ("Hess") asked Alexander why she could not

15  control her kids.  (Exhibits (## 75-88), Dep. of Mary Alexander, Ex. 1 at 91:1-2.)  Alexander

16  responded with profanity and a racial epithet.  *Id*. at 90:10-11, 16-19.  Hess felt like Alexander was

17  going to attack her.  (Exhibits (## 75-88), Dep. of Grace Hess, Ex. 10 at 26:2-27:7.)  Hess

18  subsequently walked toward the school police office.  *Id*. at 29:24-25.  Alexander followed Hess

19  into the administration building.  *Id*. at 31:11-12.  Hess ultimately told Underhill what happened

20  and made a statement/complaint.  *Id*. at 29:24-30:15.  The statement was used to initiate a citizen's

21  arrest.  (Exhibits (## 75-88), Dep. of Gary Underhill, Ex. 16 at 57:13-18.)  Thus, Underhill arrested

22  _____

23         [3]Pursuant to Nevada law, school police officers have the powers of a peace officer.  Nev. Rev. Stat. §
    289.190.

24         [4]According to Everette, the police officers pulled him out of the back of Alexander's car window and
25  threw him onto the car and onto the ground.  (Pls.' Mot. for Partial Summ. J. (# 61), Aff. of Everette Ball ¶ 6.)

26                                         3

1   Alexander when she was in the school office. *Id*. at 62:10-12.  Alexander was transported to the

2   county jail.  (Exhibits (## 75-88), Offense Report, Ex. 4 at WCSD-0256.)

3          On or about October 7th or 8th, 2004, Sharon Lieberstein ("Lieberstein"), Vice Principle of

4   discipline at Hug High School during the 2004-2005 school year, mailed Alexander written notices

5   placing Ashley and Everette on emergency suspensions for ten school days pending a

6   determination of final action.  (Exhibits (## 75-88), Dep. of Sharon Lieberstein, Ex. 9 at 20:5-9,

7   Notice of Suspensions, Ex. 2 at Exh 19, 20.)  Alexander spoke with Lieberstein a couple days after

8   Ashley and Everette were suspended.  (Exhibits (## 75-88), Dep. of Mary Alexander, Ex. 1 at

9   180:6-7.)

10         According to Defendants, Alexander, Ashley and Everette went to a meeting with school

11  officials to discuss the suspensions on October 20, 2004.  (Exhibits (## 75-88), Decl. of Eddie

12  Bonine, Ex. 8 ¶ 8; Dep. of Everette Ball at 196:5-24; Pls.' Mot. for Partial Summ. J. (# 61), Aff. of

13  Mary Alexander ¶ 9, Aff. of Ashley Ball ¶ 6.)  Eddie Bonine, Senior Director of Student Services

14  for WCSD at the time periods relevant to this litigation, allegedly heard Ashley and Everette's side

15  of the story and examined the school police report, the suspension notices and statements from

16  school employees.  (Exhibits (## 75-88), Decl. of Eddie Bonine, Ex. 8 ¶ 8.)  At this meeting,

17  Bonine allegedly informed Plaintiffs they could appeal to Debbie Cylke ("Cylke"), one of the area

18  superintendents. *Id*. ¶ 10.

19         As a result of this alleged meeting, Bonine suspended Ashley and Everette and made

20  alternative educational placements for the students. *Id*. ¶ 8.  Specifically, a letter dated October 20,

21  2004, informed Alexander that Everette was suspended for 152 school days.  (Exhibits (## 75-88),

22  October 20, 2004, Letter regarding Everette, Ex. 8.)  However, Everette was permitted to go to

23  Opportunity School. *Id*.  Ashley was suspended for twelve days and transferred to Sparks High

24  School.  (Exhibits (## 75-88), October 20, 2004, Letter regarding Ashley, Ex. 8.)

25         On November 3, 2004, Plaintiffs requested a Level II hearing in order to appeal Bonine's

26

4

1   decision.  (Pls.' Mot. for Partial Summ. J. (# 61), November 3, 2004, Letter, Ex. 9; (Exhibits (##

2   75-88), Dep. of Mary Alexander, Ex. 1 at 186:20-25; Dep. of Deborah Cylke, Ex. 6 at 46:4-12.)

3   The meeting between Plaintiffs and Cylke occurred on November 16, 2004.  (Pls.' Mot. for Partial

4   Summ. J. (# 61), Aff. of Mary Alexander ¶ 13.)  On November 24, 2004, Cylke issued a decision

5   affirming Bonine's decision.  (Exhibits (## 75-88), November 24, 2004, Letter, Ex. 2.)

6   **II.  Legal Standard**

7           Summary judgment is appropriate only when "the pleadings, the discovery and disclosure

8   materials on file, and any affidavits show that there is no genuine issue as to any material fact and

9   that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In assessing a

10  motion for summary judgment, the evidence, together with all inferences that can reasonably be

11  drawn therefrom, must be read in the light most favorable to the party opposing the motion.

12  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne*

13  *v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

14          The moving party bears the burden of informing the court of the basis for its motion, along

15  with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*,

16  477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party

17  must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

18  find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

19  1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).  For

20  those issues where the moving party will not have the burden of proof at trial, the movant must

21  point out to the court "that there is an absence of evidence to support the nonmoving party's case."

22  *Celotex Corp.,* 477 U.S. at 325.

23          In order to successfully rebut a motion for summary judgment, the non-moving party must

24  point to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

25  *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might

26

affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III. Discussion**

Defendants seek summary judgment on all remaining causes of action. Plaintiffs seek summary judgment on their third claim for relief alleging a violation of procedural due process. The court will address each cause of action and the parties' arguments below.

**A. Fourth Amendment Violations**

Plaintiffs' first claim for relief is brought pursuant to 42 U.S.C. § 1983 and alleges violations of Plaintiffs' Fourth Amendment rights. Specifically, Plaintiffs allege their arrests were without probable cause or reasonable suspicion and were effectuated by using excessive force. Defendants argue summary judgment is appropriate because probable cause existed to arrest all three plaintiffs. In addition, Defendants argue no excessive force was used to effectuate the arrests. Plaintiffs oppose the motion arguing sufficient facts support the cause of action. For purposes of clarity, the court will address each alleged Fourth Amendment violation as it relates to the individual defendants.

**1. Ashley's Fourth Amendment Cause of Action**

Defendants argue probable cause existed to arrest Ashley because Officer Underhill observed Ashley fighting. Plaintiffs argue, without proper citation, that no effort was made to identify who started the fight or whether Ashley was acting in self defense.

1    In this case, the court finds the undisputed facts show probable cause existed to arrest

2    Ashley.  Probable cause to arrest exists when "'the facts and circumstances within the knowledge

3    of the arresting officers and of which they had reasonable trustworthy information were sufficient

4    to warrant a prudent man in believing that the petitioner had committed or was committing an

5    offense.'" *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005) (quoting *United States v.*

6    *Bernard*, 623 F.2d 551, 559 (9th Cir. 1980)).  It is undisputed that Ashley was involved in the fight

7    and that Underhill witnessed Ashley fighting.  *See* (Exhibits (## 75-88), Dep. of Gary Underhill,

8    Ex. 16 at 37:25-38:9.)  In light of this undisputed evidence, probable cause existed to arrest Ashley.

9    Even if Ashley was acting in self defense, the information available at the time of her arrest would

10   warrant a prudent person in believing Ashley had committed an offense.

11              **2.  Everette's Fourth Amendment Cause of Action**

12   As with Ashley, Defendants argue probable cause existed to arrest Everette because

13   Underhill observed Everette fighting.  Plaintiffs argue summary judgment is not appropriate

14   because Everette did not participate in the fight and did not do anything wrong.  Plaintiffs further

15   argue the doctrine of collateral estoppel precludes the Defendants from re-litigating factual issues

16   that were previously determined by the Juvenile Court.  Alternatively, Plaintiffs request that the

17   court take judicial notice of the prior judicial proceeding.

18   Everette had a Juvenile Court trial on August 9, 2005, as a result of charges filed against

19   him.  (Pls.' Mot. for Partial Summ. J. (# 61), Aug. 9, 2005, Master's Report, Recommendation &

20   Order, Ex. 15 at 1.)  As a result of that proceeding, the Juvenile Court found it was not "convinced

21   beyond a reasonable doubt that [Everette] committed any offense which would give the school

22   police officers probable cause to detain or arrest him."  *Id.* at 2.

23   "[A] federal court must give to a state-court judgment the same preclusive effect as would

24   be given that judgment under the law of the State in which the judgment was rendered."  *Migra v.*

25   *Warren City Sch. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  Under the doctrine of collateral estoppel,

26

or issue preclusion, a party may be barred from re-litigating an issue of fact or law that was

previously decided in a different case. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  In Nevada,

collateral estoppel requires a showing of the following three elements:

> (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party in privity with a party to the prior litigation.

*Kahn v. Morse & Mowbray*, 117 P.3d 227, 235 (Nev. 2005) (citations and internal quotations

omitted).  In *Paradise Palms Cmty. Ass'n v. Paradise Homes*, the Nevada Supreme Court stated,

"[a] privy is one who, after rendition of the judgment, has acquired an interest in the subject matter

affected by the judgment through or under one of the parties, as by inheritance, succession, or

purchase."  505 P.2d 596, 599 (Nev. 1973).

Defendants argue collateral estoppel is inapplicable to this action because WCSD and

Washoe County are separate legal entities.  Plaintiffs argue School Police officers are an

investigatory arm of the District Attorney and were in privity with Washoe County during the

juvenile proceedings.

In the case at bar, the court finds WCSD is not in privity with Washoe County.  As stated by

Defendants, WCSD and Washoe county are separate legal entities.  WCSD is a political

subdivision of the State of Nevada whose purpose is to administer the state system of public

education.  Nev. Rev. Stat. § 386.010(2).  In contrast, Washoe County is a Nevada county and

governmental entity.  Nev. Rev. Stat. § 243.340.  More importantly, however, the court finds

WCSD did not acquire any interest in the subject matter affected by the juvenile proceedings.

Turning to the merits of the case, the court finds genuine issues of material fact that

preclude the granting of summary judgment.  Specifically, there are factual questions surrounding

Everette's arrest that preclude a determination of whether probable cause existed.  First, it is

unclear whether Everette was involved in the October 7, 2004, affray.  According to the affidavit of

Everette, he did not participate in the fight.  (Pls.' Mot. for Partial Summ. J. (# 61), Aff. of Everette Ball ¶ 5.)  Underhill, on the other hand, testified that he saw Everette actively engaged in the fight.  (Exhibits (## 75-88), Dep. of Gary Underhill, Ex. 16 at 37:4-17.)

Even if Everette did not participate in the fight, his specific conduct during the course of the fight has not been presented to the court.  In other words, it is not clear whether Everette did anything to cause Underhill to believe Everette had been involved in the fight.  Stated another way, there are factual questions related to why Underhill believed Everette was involved in the fight.  For these reasons, genuine issues of material fact preclude summary judgment on Everette's Fourth Amendment claims based on his arrest and the force used to effectuate that arrest.  Because of the factual dispute, the determination of whether the arresting officers will be entitled to qualified immunity will depend on the evidence presented at trial.  *See Santos v. Gates*, 287 F.3d 846, 855 n.12 (9th Cir. 2002**)**.

### 3.  Alexander's Fourth Amendment Cause of Action

With respect to Alexander, Defendants argue Alexander's conduct towards Hess gave Underhill probable cause to arrest Alexander.  Plaintiffs oppose summary judgment arguing probable cause did not exist because Underhill did nothing to verify Hess's accusations and no criminal liability exists because someone else feels afraid.

The evidence presented in this case demonstrates that Underhill is the officer that arrested Alexander.  (Exhibits (## 75-88), Dep. of Gary Underhill, Ex. 16 at 62:10-12.)  Thus, Underhill, in his individual capacity, is the defendant who would be liable for the alleged Fourth Amendment violation.  Subsequent to the filing of the present motion, the parties have stipulated (## 102, 103) to the dismissal of Underhill in his individual capacity while keeping Underhill as a defendant in his official capacity.  In light of this stipulation, Alexander's Fourth Amendment claim is no longer viable.  *See Hafer v. Melo*, 502 U.S. 21, 25(1991) (distinguishing personal capacity and official capacity actions).

1    However, to the extent the actions of Underhill were based on an official custom or policy,

2    a cause of action may still exist.  An official-capacity suit represents another way of pleading an

3    action against the entity of which the officer is an agent.  *Id.*  "Because the real party in interest in

4    an official-capacity suit is the governmental entity and not the named official, 'the entity's policy

5    or custom must have played a part in the violation of federal law.'"  *Id.* (quoting *Kentucky v.*

6    *Graham*, 473 U.S. 159, 166 (1985)).  Whether or not a custom or policy exists is addressed the

7    following section.

8    **B.  Custom or Policy**

9    Defendants argue the undisputed evidence demonstrates Plaintiffs' arrests were a

10   consequence of their own actions and behaviors as opposed to a longstanding practice or custom.

11   Defendants further argue no liability exists under § 1983 because no injury or constitutional

12   violation occurred.  Plaintiffs oppose summary judgment arguing that WCSD's discriminatory

13   practices were the moving force behind the constitutional injuries of plaintiffs.

14   A local government may be sued under § 1983 when an injury is inflicted as a result of the

15   "execution of a government's policy or custom, whether made by its lawmakers or by those whose

16   edicts or acts may fairly be said to represent official policy. . . ."  *Monell v. Dep't of Soc. Serv.*, 436

17   U.S. 658, 694 (1978).  Similarly, "[a] supervisor may be held liable under § 1983 if he or she was

18   personally involved in the constitutional deprivation or a sufficient causal connection exists

19   between the supervisor's unlawful conduct and the constitutional violation."  *Jackson v. City of*

20   *Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001) (citations omitted).  No liability exists under § 1983

21   where no injury or constitutional violation occurred.  *Id.*

22   As evidence of a custom or policy, Plaintiffs first cite to the deposition of Underhill.

23   During his deposition, Underhill indicated he was told, and agreed, that the school police had to

24   regain control of the school.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 99), Dep. of Gary

25   Underhill, Ex. 17 at 75:21-79:13.)  The court finds this statement insufficient as evidence of a

26

custom or policy.  The fact Underhill was told that school police had to regain control of the school does not suggest that control would be regained at the expense of constitutional rights.  To put this statement in context, Underhill indicated the school had problems in terms of drugs, gang activity, fights and that it was not a positive learning environment.  *Id*. at 79:1-23.  Thus, Underhill took the personal view that he would enforce the rules strictly and make arrests rather than citations.  *Id*. at 76:8-13.  In short, nothing in Underhill's deposition testimony indicates a custom or policy of making unlawful arrests or using excessive force.

Plaintiffs next cite to the deposition testimony of Debra Feemster ("Feemster"), Diversity Coordinator, as evidence of a custom or policy.  Feemster indicated she had seen certain individuals treat students of color unfairly.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 99), Dep. of Debra Feemster, Ex. 11 at 51:11-18.)  However, Feemster further stated, "it could be [due] to lack of education.  I don't think people do things deliberately, I would hope not."  *Id*. at 51:21-23.

The fact Feemster may have witnessed discriminatory treatment does not suggest the existence of an official custom or policy.  Feemster has not identified any individuals who discriminated against students of color nor has she testified as to any policy that allowed for such discriminatory treatment.  As such, this testimony is not evidence of an official policy or custom.

Plaintiffs next request the court to take judicial notice of actions pending before the court involving allegations that Underhill illegally arrested other African-American students.  Plaintiffs' request for judicial notice will be denied on the basis of relevance.  The fact Plaintiffs' counsel has filed similar actions against Underhill containing allegations of unlawful arrests does not indicate WCSD has an official policy or custom regarding such a practice.  There is no evidence Underhill was responsible for creating the official policy or custom of WCSD.  Furthermore, there is no evidence indicating Underhill treated African-American students and non-African-American students differently.

Finally, Plaintiffs argue Alexander's complaints based on discrimination were not handled

11

1   in a timely fashion.  Alexander filed a discrimination complaint on November 14, 2004.  (Pls.'

2   Opp'n to Defs.' Mot. for Summ. J. (# 99), Aff. of Mary Alexander, Ex. 5 ¶ 7.)  In January, 2005,

3   WCSD contacted Alexander about the complaint and asked to interview Ashley and Everette.  *Id*. ¶

4   11.  The court finds this evidence insufficient to create a genuine issue of material fact.  Although

5   the affadivit of Alexander indicates a delay in the investigation of a discrimination complaint, the

6   delay was over the November and December holidays and school break.  The delay does not

7   indicate any official policy or custom that resulted in the violation of a constitutional right.

8       In short, Defendants met their initial burden of showing Plaintiffs have no evidence of a

9   policy or custom.  Plaintiffs failed to rebut this showing as they have presented no evidence of such

10   a policy or custom.  Thus, summary judgment will be granted.

11       **C. Title VI**

12       Plaintiffs' second cause of action alleges a violation of Title VI of the Civil Rights Act of

13   1964, 42 U.S.C. § 2000d.  Defendants seek summary judgment arguing there is no evidence of

14   intentional race discrimination.  Alternatively, Defendants argue there is no evidence linking

15   federal funding to the arrests and suspensions of Ashley and Everette.  Plaintiffs, on the other hand,

16   argue they have presented evidence indicating WCSD showed a discriminatory intent towards

17   students of color at Hug High School.  Plaintiffs further argue federal funding is used for the

18   general operation of the school and for the Drop Out Prevention Program.

19       Title VI provides, "[n]o person in the United States shall, on the ground of race, color, or

20   national origin, be excluded from participation in, be denied the benefits of, or be subjected to

21   discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C.

22   2000d.  This provision creates a private right of action for both injunctive relief and damages.

23   *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001).  To state a claim for damages under Title VI, a

24   plaintiff must allege that (1) the entity involved is engaging in racial discrimination, and (2) the

25   entity involved is receiving federal financial assistance.  *Fobbs v. Holy Cross Heath Sys. Corp.*, 29

26

F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001).  Discrimination must be intentional in order to be actionable under Title VI.  *Sandoval*, 532 U.S. at 280.  In addition, a plaintiff must prove he is an intended beneficiary of the federally-funded program at issue.  *The Epileptic Found. v. City and County of Maui*, 300 F.Supp.2d 1003, 1011 (D. Haw. 2004) (citing *Wrenn v. Kansas*, 561 F.Supp. 1216, 1212 (D. Kan. 1983)).

Looking at the evidence in the light most favorable to Plaintiffs, the court finds no evidence of intentional discrimination.  To establish discriminatory intent, Plaintiffs first argue seventy-five percent of the student body at Hug High School consists of minorities.  Although Plaintiffs are correct that Hug High School is largely composed of minority students, (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 99), Dep. of Paul Dugan, Ex. 16 at 80:9-15), such statistics do not suggest intentional discrimination.

Similarly, as discussed above, Underhill's statement regarding the school police regaining control of the school, (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 99), Dep. of Gary Underhill, Ex. 17 at 75:21-79:13), does not show intentional discrimination.  Nothing in Underhill's statement indicates school police were treating students differently on account of their race.  Rather, Underhill's statement was a response to problems that were occurring at Hug High School.

Plaintiffs also argue several instances of discrimination occurred and were sanctioned by the administration in the 2003-2004 school year.  Patrick McGuire ("McGuire"), a teacher, testified that a vice-principal by the name of Redmond singled out Hispanic and African-American students for suspensions.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 99), Dep. of Patrick McGuire, Ex. 12 at 15:3-12, 22:3-6, 85:3-14.)  This testimony fails to create a genuine issue of material fact.  McGuire's testimony does not identify any individual other than Redmond that discriminated against minority students.  Furthermore, there is no evidence concerning whether Redmond is still employed at Hug High School.  Finally, there is no evidence that Redmond was involved with any

1   decision regarding Ashley and Everette.

2       Plaintiffs next rely on the testimony of Feemster.  As previously discussed, Feemster

3   indicated she had seen certain individuals treat students of color unfairly.  (Pls.' Opp'n to Defs.'

4   Mot. for Summ. J. (# 99), Dep. of Debra Feemster, Ex. 11 at 51:11-18.)  This testimony fails to

5   establish a genuine issue of material fact because Feemster explicitly opined that the discrimination

6   was not deliberate.  *Id*. at 51:21-23.

7       Plaintiffs also rely on the double-hearsay statement of Feemster who was told by a teacher's

8   aide that a teacher allegedly said, "they need to get rid of all black kids."  *Id*. at 57:12-16.  This

9   double-hearsay statement is inadmissible and cannot be considered in a motion for summary

10  judgment.  *See* Fed. R. Evid. 801, 802; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773

11  (2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary

12  judgment.")  Even if this statement were admissible, it fails to show the actions taken against

13  Everrete and Ashley were intentionally discriminatory.  There is no indication that the teacher who

14  allegedly made the statement at issue played any role in the events of this case.

15      Finally, Plaintiffs argue WCSD had a dropout prevention policy that was not applied to

16  African-American students.  Plaintiffs have provided evidence indicating that "graduation

17  specialists" contact students that have failed one or more classes and have had one or more

18  absences.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 99), Dep. of Eric Beye, Ex. 22 at 21:13-25.)

19  Furthermore, there is evidence indicating neither Ashley nor Everette were contacted by a

20  graduation specialist.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 99), Aff. of Mary Alexander,

21  Ex. 5 ¶ 12.)

22      Once again, the court finds this evidence insufficient to suggest intentional discrimination.

23  The fact neither Ashley nor Everette were contacted by a graduation specialist is not, by itself,

24  evidence of discrimination.  Plaintiffs have provided no evidence as to whether other, non-African-

25  American, students were contacted by the graduation specialist.  It is certainly possible the

26

14

graduation specialist failed to contact students of all races.  Without evidence indicating African-American students were denied contact with the graduation specialist while other non-African-American students had such contact, the court cannot say that the failure to contact Ashley and Everette is evidence of intentional discrimination.

Thus, the court finds Defendants met their initial burden of demonstrating no evidence supports Plaintiffs' Title VI claim.  Plaintiffs failed to rebut the motion by setting forth evidence that demonstrates a genuine issue of material fact.  As such, summary judgment will be granted on Plaintiffs' cause of action pursuant to Title VI.

**D.  Procedural Due Process**

Plaintiffs' third cause of action sets forth a claim for a violation of procedural due process. Plaintiffs argue WCSD's regulations do not provide for adequate due process.  Alternatively, Plaintiffs argue Defendants ignored their regulations and thus deprived Plaintiffs of due process.[5] Specifically, Plaintiffs argue they were not provided with a post-suspension hearing following the ten-day emergency suspension and they were not provided a pre-suspension hearing before the long-term suspensions occurred.  Defendants, on the other hand, argue Ashley and Everette had sufficient notice and opportunity to be heard.  Alternatively, Defendants argue no due process violation occurred since there is no proof of substantial prejudice.

Nevada has created a property interest in a student's entitlement to a public education.  *See* Nev. Const. art. XI, § 2.  In *Goss v. Lopez*, 419 U.S. 565 (1975), the Supreme Court articulated what procedure is due before a student can be suspended for a short period of time.

> Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.

---

[5]The court has previously determined there is no private right of action for violations of the WCSD Administrative Regulations.  (Feb. 17, 2006, Order (# 37) at 17-18.)

15

*Id*. However, the Supreme Court explained there does not need to be a delay between the notice and the time of the hearing. *Id*. at 582. Rather, the student must be informed of the accusations against him and be given an opportunity to explain his version of the facts. *Id*.

There are recurring situations in which prior notice and hearing cannot be insisted upon. *Id*. "Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school." *Id.* In such circumstances, the required procedure must occur "as soon as practicable." *Id*.

Looking at the undisputed evidence presented by the parties, the court finds Plaintiffs are entitled to summary judgment. The evidence in this case shows Ashley and Everette were subject to both a short-term suspension and a long-term suspension. It is undisputed Ashley and Everette did not receive notice and a hearing before the short-term suspension. Nevertheless, under the circumstances of the case, WCSD had the authority to remove Ashley and Everette due to the presence of a continuing danger. A large fight had just occurred on campus and the administration was taking steps to restore the normal educational environment.

Even though a pre-suspension hearing was not necessary for the short-term suspension, WCSD was still required to give the students notice and an opportunity to be heard as soon as practicable. *See Goss*, 419 U.S. at 582. Lieberstein mailed written notices regarding the short-term suspension on or about October 7th or 8th, 2004 (Exhibits (## 75-88), Dep. of Sharon Lieberstein, Ex. 9 at 20:5-9; Notice of Suspensions, Ex. 2 at Exh 19, 20.) WCSD did not afford Ashley and Everette an opportunity to be heard. At a recent hearing before this court, Bonine testified that he could suspend a student for days without any evidence of their wrongdoing and not give them an opportunity to meet with him for that period. In this case, Plaintiffs did not have any sort of hearing until the October 20, 2004, meeting with Bonine. (Exhibits (## 75-88), Decl. of Eddie Bonine, Ex. 8 ¶ 8.) This hearing occurred nine school days after the short-term suspensions were issued. *See id.*

1    With regard to a short-term suspension of ten days, a nine-day delay between the

2    suspension and an opportunity to be heard is clearly contrary to the requirements set forth in *Goss*.

3    *See Goss*, 419 U.S. at 581.  In this case, WCSD was required to provide a rudimentary hearing as

4    soon as practicable.  *Id*. at 582.  Nevertheless, WCSD did not hold any sort of hearing until the end

5    of the short-term suspension.  Thus, the procedure used by WCSD violated Ashley and Everette's

6    Procedural Due Process rights.

7    With respect to the meeting before Bonine, there are issues of fact as to whether this

8    meeting satisfied Due Process.  On March 14, 2008, the court heard testimony as to what happened

9    at the meeting before Bonine.  It is clear there is conflicting evidence as to what happened at this

10   meeting.  Specifically, there is a factual dispute concerning whether Bonine summarized the

11   evidence against Ashley and Everette.  In addition, there is a factual dispute concerning whether

12   Plaintiffs had an opportunity to present their side of the story.

13   Even with the violation found by the court, Defendants argue summary judgment is

14   inappropriate because there is no proof of substantial prejudice.  Defendants rely on *Watson v.*

15   *Beckel*, 242 F.3d 1237 (10th Cir. 2001).  *Watson* involved a student that was expelled from a state

16   military academy for assaulting a fellow student.  *Id*. at 1238-39.  The student filed a § 1983 action

17   alleging a violation of due process on the basis of inadequate notice.  *Id.* at 1240.  The student

18   argued, in part, that he was not told he was charged with racism.  *Id*.

19   In analyzing the issue, the *Watson* court stated, "[i]n order to establish a denial of due

20   process, a student must show substantial prejudice from the allegedly inadequate procedure."  *Id*. at

21   1242.  The court found the student had not been prejudiced because he admitted to assaulting his

22   fellow student due to that student's race.  *Id*.  Thus, the court concluded additional notice would

23   not have allowed the student to better defend against the allegations.  *Id*.

24   The parties have cited no authority as to whether the Ninth Circuit requires a showing of

25   substantial prejudice.  Furthermore, the Supreme Court in *Goss* did not indicate such a showing is

26

17

necessary.  Nevertheless, even if a showing of substantial prejudice is required, the court finds

Ashley and Everette did suffer substantial prejudice in this case.  With respect to the short-term

suspension, Ashley and Everette did not have an opportunity to be heard until the suspension was

nearly complete.  Thus, the punishment had already taken place before the students received due

process.  The court finds this deprivation amounts to substantial prejudice.

For the foregoing reasons, the court will grant partial summary judgment in favor of

Plaintiffs with respect to the short-term suspension.  However, summary judgment was only sought

with respect to liability.  Therefore, a trial will be necessary to determine damages and resolve

factual questions regarding the Bonine hearing.

**E.  Negligent Supervision and Training**

Plaintiffs' eleventh cause of action states a claim for negligent supervision and training.

Defendants seek summary judgment arguing there is no evidence of antecedent events that would

have given WCSD pause in hiring any of the defendants.  Plaintiffs oppose summary judgment

arguing that evidence shows the hiring of Underhill was negligent.  Plaintiffs further argue WCSD

was negligent in training and supervising its staff because it failed to require them to act in accord

with adopted regulations for imposing discipline.

"'The tort of negligent hiring imposes a general duty on the employer to conduct a

reasonable background check on a potential employee to ensure that the employee is fit for the

position.'" *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996) (quoting *Burnett v. C.B.A. Sec.  Serv.*,

820 P.2d 750, 752 (Nev. 1991)).  "An employer breaches this duty when it hires an employee even

though the employer knew, or should have known, of that employee's dangerous propensities." *Id*.

(citing *Kelley v. Baker Protective Services, Inc.*, 401S.E.2d 585, 586 (Ga. 1991)).  Employers also

have a duty to use reasonable care in training, supervision, and retention of his or her employees to

make sure that employees are fit for their positions.  *Id*. (citing 27 Am. Jur. 2d *Employment*

*Relationship* §§ 475-76 (1996)).

18

1    Plaintiffs first argue WCSD was negligent in its training and supervision of Underhill.

2  During his deposition, Underhill indicated he had previously applied to the Sparks Police

3  Department.  (Pls.' Opp'n to Defs.' Mot. for Sum. J. (# 99), Dep. of Gary Underhill, Ex. 17 at

4  18:11-12.)  Underhill was told he was not hired because he did not pass his "department psych."

5  *Id*. at 19:3-5.  However, Underhill later found out he did pass and was not hired due to a personal

6  conflict.  *Id*. at 19:6-10.

7    As an initial matter, Plaintiffs have provided no evidence Underhill actually failed any

8  psychological exam.  Underhill's own testimony indicates Underhill believes he passed the exam.

9  Nevertheless, even if Underhill failed the exam, there is no evidence that the failing of the exam is

10  in any way related to the allegations of unlawful arrest and excessive force in this case.  In order for

11  an employer to be liable for negligent hiring, there must be evidence that the employer's negligence

12  caused the alleged injury.  *See Hall*, 930 P.2d at 98; *Rockwell v. Sun Harbor Budget Suites*, 925

13  P.2d 1175, 1226-27 (Nev. 1996).  Here, there is no evidence indicating what the psychological

14  exam tests were for or why Underhill allegedly failed the exam.  More importantly, Plaintiffs have

15  presented no evidence Underhill was involved with unlawful arrests or excessive force prior to

16  being hired by WCSD.  Finally, Plaintiffs have presented no evidence WCSD failed to conduct a

17  reasonable background check.

18    Plaintiffs next argue WCSD was negligent in its training of Underhill.  Plaintiffs first rely

19  on the deposition of Mike Mieras ("Mieras") to argue there was no training budget for the 2004-

20  2005 school year.  Although there was no money specifically designated for training, Mieras

21  explicitly stated that money from the general fund is used to send some officers to training.  (Pls.'

22  Opp'n to Defs.' Mot. for Summ. J. (# 99), Dep. of Mike Mieras, Ex. 23 at 18:20-25.)

23    Plaintiffs next rely on a May 12, 2005, evaluation of Underhill.  The evaluation indicates

24  Underhill "needs to transition from a traditional law enforcement agency to a specialized (school

25  district police) agency."  (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 99), May 12, 2005, Employee

26

19

1    Performance Evaluation Report, Ex. 24.)  Although this unauthenticated document indicates

2    Underhill needed to make a "transition," it does not demonstrate WCSD was negligent in failing to

3    train Underhill.  If anything, the evaluation demonstrates WCSD was working with Underhill to

4    improve his job performance.

5         Next, Plaintiffs have presented evidence that Dugan, the District superintendent, was aware

6    of complaints regarding Underhill.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 99), Dep. of Paul

7    Dugan, Ex. 16 at 80:9-15).  However, there is no evidence WCSD failed to investigate the

8    complaints or provide training and supervision to Underhill.  In short, none of the evidence relied

9    on by Plaintiffs shows WCSD failed to adequately train or supervise Underhill.  Thus, Plaintiffs

10   have failed to rebut Defendants' properly-supported motion and summary judgment will be

11   granted.

12        Plaintiffs next argue WCSD was negligent in the training and supervision of staff because it

13   failed to require staff members to act in accord with their adopted rules for imposing discipline.

14   According to Plaintiffs, Defendants blatantly ignored their own regulations.   Nevertheless,

15   Plaintiffs have failed to provide any evidence that WCSD does not require staff to comply with

16   rules for imposing discipline.  In addition, Plaintiffs have not identified any individual that failed to

17   comply with a regulation.  Furthermore, Plaintiffs have not provided evidence linking any alleged

18   negligence on the part of WCSD to an injury to Plaintiffs.  The court has previously determined

19   there is no private right of action for violations of the WCSD Administrative Regulations.

20   (Feb. 17, 2006, Order (# 37) at 17-18.)  Thus, the failure to comply with those regulations is not

21   enough to show an injury to Plaintiffs.  The court finds Plaintiffs have failed to rebut Defendants'

22   properly supported motion.  Summary judgment will be granted.

23        IT IS THEREFORE ORDERED that Plaintiffs' Motion for Partial Summary Judgment (#

24   61) is hereby GRANTED.

25        IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (# 73) is

26
                                          20

hereby GRANTED in part and DENIED in part.  The motion is denied with respect to Plaintiffs'

Due Process claim and Everette's Fourth Amendment cause of action.  The motion is granted in all

other respects.

IT IS FURTHER ORDERED that the parties shall have thirty (30) days within which to

lodge with the court a proposed written joint pretrial order.

IT IS SO ORDERED.

DATED this 25th day of March, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

21